Jack L. SCHWARTZ, Plaintiff,

v.

The UNITED STATES of
America, Defendant.

No. 642–87L.

United States Claims Court.

Jan. 17, 1989.

Evelyn Conroy Sparks, Portland, Or., atty. of record, for plaintiff. Jolles, Sokol & Bernstein, P.C., of counsel.

Fred R. Wagner, Washington, D.C., with whom was Acting Asst. Atty. Gen. Roger J. Marzulla, for defendant. Vernon Peterson, Dept. of the Interior, Portland, Or., of counsel.

## OPINION

NAPIER, Judge:

This case is brought under 28 U.S.C. § 1491(a)(1) by an attorney seeking recovery from the Government of attorney fees he was unable to collect from his client. He alleges that the Government's refusal to pay his client's claim in the form of a joint-payee check, payable to the attorney and his client, constitutes a breach of an agreement between himself and the Government. Furthermore, the complaint alleges that the Government violated applicable federal regulations. The complaint asserts that both causes of action render the Government liable for the uncollected contingent fee from plaintiff's client.

Defendant has filed a motion to dismiss for lack of subject-matter jurisdiction or, in the alternative, a motion for summary judgment under Rules 12(b)(1) and 56 respectively, of the RUSCC. Along with the pleadings, outside matters were filed with and reviewed by the Court.

Rule 12(b)(4) RUSCC establishes that where material beyond the pleadings is presented to and not excluded by the Court, a motion to dismiss shall be treated as one for summary judgment. Under the rule, however, that portion of the motion which addresses the Court's subject-matter jurisdiction remains a motion to dismiss. RUSCC 12(b); 5 Wright & Miller, *Federal Practice & Procedure:* Civil § 1366 (1969).

After a review of the pleadings, supporting memoranda and relevant case law, the Court concludes:

(1) that the Court does not have subject-matter jurisdiction to hear plaintiff's breach of contract action,

(2) that there are no genuine issues of material fact involving plaintiff's second cause of action, and

(3) that defendant is entitled to judgment as a matter of law as to plaintiff's second cause of action.

Both that portion of the motion to dismiss under Rule 12(b)(1) RUSCC and defendant's motion for summary judgment under RUSCC 56 are therefore granted, and the complaint must be dismissed.

### I. *Facts*

Plaintiff is a duly licensed attorney admitted to practice in the State of Oregon and before the Department of Interior's (DOI) Bureau of Indian Affairs (BIA). In August 1985 he was retained by Mrs. Linda Slockish to represent her before the BIA.

A brief description of Mrs. Slockish's underlying claim is necessary to fully understand plaintiff's complaint. In 1975 a BIA probate judge issued an order by which Mrs. Slockish received a sum of money as the beneficiary of the estate of Mr. Harvey K. Phillips. This money was deposited into Mrs. Slockish's Individual Indian Account and subsequently withdrawn by Mrs. Slockish. In 1978 the Bureau believed that it had erroneously overpaid Mrs. Slockish in regard to the Phillips estate. However, Mrs. Slockish had no funds in her account to recover for overpayment. In 1981 Mrs. Slockish became the beneficiary of funds from a separate estate also administered under BIA jurisdiction. The BIA withheld $19,000 of these funds, representing the alleged overpayment, plus $6,000 interest. Mrs. Slockish then hired plaintiff in August 1985, claiming that the Government erred in withholding the funds.

In exchange for legal services to be rendered by the plaintiff, a contingent fee agreement and an assignment were executed by plaintiff and Mrs. Slockish. The contingent fee agreement stated that plain-

tiff would receive 33.3 percent of Mrs. Slockish's award if the case were settled without filing suit or a demand for arbitration.

On April 29, 1986, the Comptroller General of the United States issued an opinion on the matter, and BIA repaid Mrs. Slockish $19,457.26. Thereafter, a warrant for repayment was issued and the BIA transferred the amount from the general Bureau account to Mrs. Slockish's Individual Indian Account. The day after the money was deposited Mrs. Slockish withdrew the entire amount.

The dispute between plaintiff and defendant arises out of an alleged promise made by Mr. Don Gray of the BIA to plaintiff to issue a joint-payee check in the amount of Mrs. Slockish's award. In an effort to ensure payment for legal services rendered to Mrs. Slockish, plaintiff had requested that Mr. Gray issue such joint-payee check. According to plaintiff, on or before January 6, 1986, Mr. Gray stated to plaintiff that a joint-payee check would be issued if the Bureau received notarized authorization from Mrs. Slockish. Plaintiff then sent Mr. Gray a copy of the notarized assignment and the contingent fee agreement. BIA thereafter sent plaintiff a letter dated May 8, 1987, which stated that Mrs. Slockish's award was transferred to her account in lieu of issuing a joint-payee check. Plaintiff's complaint asserts that defendant owes him $6,485.42, representing one-third of Mrs. Slockish's $19,457.26 award, because it breached its promise to issue a joint-payee check.

## II. *Discussion*

### A. *Rule 12(b)(1) Motion to Dismiss*

Defendant moves for dismissal pursuant to Rule 12(b)(1) RUSCC, asserting that plaintiff's claim does not satisfy the requirements of the Tucker Act, 28 U.S.C. § 1491(a)(1), necessary to invoke this Court's jurisdiction.

This section of the Tucker Act confers jurisdiction upon the Court as follows:

The United States Claims Court shall have jurisdiction to render judgment upon any claim against the United States founded either upon the Constitution, or any act of Congress, or any regulation of an executive department, or upon any express or implied contract with the United States, or for liquidated or unliquidated damages in cases not sounding in tort * * *.

28 U.S.C. § 1491(a)(1).

■ In a case such as this, where a party moves to dismiss for lack of subject-matter jurisdiction, the Court must consider the facts alleged in the complaint to be true and correct. *Scheuer v. Rhodes*, 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1974); *Air Products and Chemicals, Inc. v. Reichhold Chemicals, Inc.*, 755 F.2d 1559, 1562 n. 4, (Fed.Cir.), *cert. dismissed*, 473 U.S. 929, 106 S.Ct. 22, 87 L.Ed.2d 700 (1985).

In his complaint plaintiff states facts allegedly supporting two legal theories under the Tucker Act.

■ It appears to the Court that the first legal theory upon which plaintiff seeks to recover is that of breach of contract by defendant. Secondly, through its recitation of the facts, plaintiff alleges the violation of an express federal regulation by a Government official. In this latter claim, plaintiff asserts that Mr. Don Gray, a Government official in the New Mexico office of the BIA, acting with statutory authorization and in the course of his employment, expressly promised that a joint-payee check would be issued to plaintiff, which, after reliance thereon by plaintiff, the Government refused to do. (*See* Appendix A for copies of plaintiff's complaint filed October 13, 1987, and amended complaint filed March 7, 1988.)

The facts alleged by plaintiff in his amended complaint to support the breach of contract claim allow the Court to dispose of that legal issue on defendant's 12(b)(1) motion. Taking all facts alleged in the complaint to be true, the Court is unable to find that an express or implied-in-fact contract exists between the parties, upon which plaintiff must base his contract claim. Absent a contract between plaintiff and defendant, plaintiff's breach of contract claim must fail on defendant's 12(b)(1)

motion to dismiss for lack of subject-matter jurisdiction.

Privity of contract between a claimant and the United States is a necessary element of a breach of contract action brought under 28 U.S.C. § 1491. *Brannan v. United States*, 7 Cl.Ct. 399, 403 (1985). Defendant claims that the only privity of contract in this case was between plaintiff and his client, Linda Slockish, which cannot bind the United States to claimant in a contractual capacity. Plaintiff asserts that he entered into a contract with the United States through Mr. Don Gray, acting as an agent of the Government.

Whether Mr. Gray was in fact an agent representing the United States is not a material issue to this claim. Nor is it material to the contract claim whether Mr. Gray in fact promised plaintiff to issue a joint-payee check. Assuming plaintiff's alleged facts to be true, i.e., that Mr. Gray was serving as an official representative of the Government when he promised plaintiff a joint-payee check, plaintiff does not allege nor otherwise demonstrate that he provided any consideration to support a contract between the parties, other than detrimental reliance.

In his amended complaint, plaintiff states that "[p]laintiff relied on Gray's statement [to issue a check made payable to both plaintiff and Ms. Slockish] and did not otherwise secure his right to a share of the Slockishes' funds." Nowhere does plaintiff state or imply that anything other than detrimental reliance was afforded defendant in return for Mr. Gray's promise.

▪ Detrimental reliance upon a statement made by one opposing the existence of a contract is controlled by the law of contracts, specifically promissory estoppel. Promissory estoppel operates in an equitable sense to bind one party to a promise made by him to another when the latter has reasonably relied on that promise to his detriment. Restatement (Second) of Contracts § 90 (1979). Such a contract is one implied-in-law. Although the Tucker Act confers jurisdiction upon this Court over "express and implied contracts", the cases

have uniformly interpreted the term "implied contracts" to mean only contracts implied-in-fact. *Merritt v. United States*, 267 U.S. 338, 341, 45 S.Ct. 278, 279, 69 L.Ed. 643 (1925); *Sutton v. United States*, 256 U.S. 575, 581, 41 S.Ct. 563, 565, 65 L.Ed. 1099 (1921); *Tempel v. United States*, 248 U.S. 121, 130–31, 39 S.Ct. 56, 59, 63 L.Ed. 162 (1918). Therefore, since plaintiff has not alleged purported consideration to the Government other than that of detrimental reliance, a contract of the nature requisite to this Court's jurisdictional authority does not exist. Plaintiff's claim for breach of contract must therefore be dismissed under defendant's motion for lack of subject-matter jurisdiction pursuant to RUSCC 12(b)(1).

B. *Rule 56 Motion for Summary Judgment*

Plaintiff's second claim, i.e., that Mr. Gray acted pursuant to statutory authority in promising to issue a joint-payee check, is disposed of pursuant to Rule 56.

Defendant correctly points out that plaintiff does not allege a violation of a right founded on any particular federal statute or regulation mandating compensation. Defendant's argument, adopted by the Court, follows:

In order for the plaintiff to bring suit under the Tucker Act, he must demonstrate a substantive basis for the waiver of sovereign immunity. It is well established that a suit in this court is only proper insofar as the United States has waived sovereign immunity and consented to suit. *See United States v. Mitchell*, 445 U.S. 535, 538 [100 S.Ct. 1349, 1351, 63 L.Ed.2d 607] (1980); *United States v. Testan*, 424 U.S. 392, 399 [96 S.Ct. 948, 953, 47 L.Ed.2d 114] (1976). The waiver of sovereign immunity and consent to be sued must be clearly expressed and will be strictly construed. *See United States v. King*, 395 U.S. 1, 4 [89 S.Ct. 1501, 1502–1503, 23 L.Ed.2d 52] (1969).

Thus, the Tucker Act does not afford a plaintiff a claim against the United States, it merely waives sovereign immu-

nity in the Claims Court where a substantive right already exists. *See United States v. Testan, supra,* [424 U.S.] at 400 [96 S.Ct. at 954]; *United States v. Connolly,* 716 F.2d 882, 885 (Fed.Cir. 1983), *cert. denied,* 465 U.S. 1065 [104 S.Ct. 1414, 79 L.Ed.2d 740] (1984). No substantive right on which to premise a Tucker Act claim exists.

In the present case, the Complaint does not allege a violation of a right founded on any particular federal statute or regulation mandating compensation. The plaintiff apparently contends that he holds a valid "assignment" against the United States under 31 U.S.C. § 3727. This court has held that "[w]ithout a mandate which can fairly be interpreted as allowing an award of money damages [the Claims Court] cannot grant relief." *Hambsch v. United States,* 12 Cl.Ct. 744, 749 (1987), [*vacated on other grounds,* 857 F.2d 763 (Fed.Cir.1988)]; *see also Eastport S.S. Corp. v. United States* [178 Ct.Cl. 599], 372 F.2d 1002, 1007 (1967).

Finally, there is no contract with the United States, either express or implied, present in this case. The attorney-client agreement in this case between plaintiff Schwartz and Ms. Slockish is not one in which the United States is a party or in which one of the parties is acting as agent of the United States. Of course, Ms. Slockish has no authority to bind the government as a party. The Tucker Act provides the United States' consent to be sued in contract actions only by those with whom it has privity of contract. *See Erickson Air Crane Co. v. United States,* 731 F.2d 810, 813 (Fed.Cir.1984).

None of the Tucker Act requirements for jurisdiction in the Claims Court are satisfied by the plaintiff. The facts in the Complaint do not allege either substantive basis for a waiver of sovereign immunity, a violation of a federal statute, or establish a contract between the plaintiff and the United States. Therefore, this claim should be dismissed for lack of jurisdiction in the Claims Court. Plaintiff can show no contractual undertaking for consideration by the United

States. At best, plaintiff has an agreement with its [sic] client. The limited waiver of sovereign immunity contained in the Tucker Act, strictly construed, cannot stretch so far as to permit liability to be imposed on such third party undertakings. *See Tucker v. United States,* 7 Cl.Ct. 374 (1985). [Footnotes omitted.]

Plaintiff argues that Don Gray, presumably of the New Mexico office of the BIA, promised a joint-payee check to plaintiff and Ms. Slockish if a notarized authorization was received by the BIA. The amended complaint also contends that Mr. Gray, in making this promise, was acting in the course and scope of his employment with the Government and was authorized to approve the joint payment. Assuming all facts alleged by plaintiff to be true, that Mr. Gray did in fact make the alleged promise to plaintiff, and, in so doing, was acting under statutory authority, the Court has jurisdiction to review plaintiff's claim to the extent that it is based upon either an "act of Congress or any regulation of an executive department * * *." 28 U.S.C. § 1491(a)(1).

The relevant facts for plaintiff's second cause of action are not in dispute. Plaintiff alleged in his amended complaint, and defendant does not dispute in its "Motion to Dismiss or, in the Alternative, Motion for Summary Judgment," that Mr. Don Gray or the BIA promised plaintiff that "a joint-payee check would be made if a notarized authorization was received by the BIA."

Defendant's response to plaintiff's allegation does not refute that the promise was made, rather, it challenges the sufficiency of the assignment that plaintiff claims Mr. Gray recognized. Defendant contends that the "assignment" by Mrs. Slockish of a portion of her claim to plaintiff falls within the Anti–Assignment Act, 31 U.S.C. § 3727, and does not meet its requirements for a valid assignment. Defendant argues that plaintiff's argument therefore must fail.

Plaintiff replies that the Anti–Assignment Act, by its own terms, applies only to the assignment of "claims upon the government," and, since Mrs. Slockish was at-

tempting to regain an interest in property adverse to the interest held by the United States, there was no "claim" involved, upon which to base application of the Anti–Assignment Act.

The issues involved in this second cause of action are three: (1) whether Mrs. Slockish's lawsuit against the Government amounted to a "claim *against* the government," and thus was governed by the Anti–Assignment Act of 1982, 31 U.S.C. § 3727; (2) if Mrs. Slockish's action did involve a "claim against the government," triggering application of the Act, whether the Act's requirements were waived by Mr. Gray's alleged promise to issue a joint-payee check; and (3) if the requirements of the statute were not waived by Mr. Gray, was the statute adhered to in order to render the assignment valid and binding on the Government?

For the reasons set forth below, the Court determines that: (1) plaintiff's client brought a claim against the Government, (2) Mr. Gray, in merely promising plaintiff a joint-payee check, did not waive the requirements of the Anti–Assignment Act, and (3) the requirements of the Act were not followed to create a valid assignment to which the Government is bound.

■ Plaintiff argues that Mrs. Slockish's action to recover funds from the Government did not amount to a "claim against the government." Rather, plaintiff contends that her suit was an action on the *res* itself.

Similar arguments have been made in the past by plaintiffs attempting to circumvent the strict requirements of the Anti–Assignment Act. The broad language of the Act, however, lends itself to a general, rather than specific, interpretation of its terms. As the district court in *Marger v. Bell*, 510 F.Supp. 9, 13 (D.Maine 1980), stated:

> There is nothing in the statutory language to warrant the restrictive interpretation for which plaintiff contends. As the Supreme Court has said of Section 203 [similar in content to 31 U.S.C. § 3727]: "No language could be broader or more emphatic than these enactments. The words embrace every claim against

the United States, however arising, of whatever nature it may be, and wherever and whenever presented." *United States v. Gillis*, 95 U.S. [407] at 413 [24 L.Ed. 503 (1877)]. Indeed, the Court has made clear that Section 203 safeguards governmental interests by protecting the government whenever a demand is made upon it to make payment or deliver property.

*Id.*

The court in *Marger* also discussed situations where, as plaintiff here contends, the Government has possession of property through erroneous or illegal means. The manner by which the Government has acquired property does not change the application of the Anti–Assignment Act when a claim is involved:

> Thus, even if the government seizes property arbitrarily or illegally, as plaintiff alleges occurred in this case, the action to recover the property from the custody of the United States constitutes a "claim against the United States" for the purposes of Section 203.

*Id.*, citing *United States v. Praetorius*, 487 F.Supp. 13 (E.D.N.Y.1980).

Section 203 of Title 31, to which many of the cases cited in this Opinion refer, was the Anti–Assignment statute in effect before 31 U.S.C. § 3727, which is applicable since 1982. The requirements of both statutes are identical for purposes of a valid assignment. Both 31 U.S.C. § 3727 and 31 U.S.C. § 203 require the following before an assignment is deemed valid: the assignment can be made only after the claim has been allowed and the amount ascertained, and a warrant for payment of the claim has been issued; the assignment shall specify the warrant, and must be made freely and attested to by two witnesses; and the one making the assignment shall acknowledge it before an official who may acknowledge a deed, and the official shall certify the assignment, and state that he or she fully explained the assignment when it was acknowledged.

In determining whether Mrs. Slockish had brought a "claim against the govern-

**188**

ment," defendant correctly notes that plaintiff himself described his client's action against the Government as a "claim". The original contingent fee agreement states that "[t]he undersigned, Client, hereby retains Jack L. Schwartz, Lawyer, to prosecute Client's *claim* against [DOI and BIA] * * *." [Emphasis added.] The alleged assignment provides: "[t]his is an authorization of attorney Jack L. Schwartz to act in my behalf regarding my *claim* against the [BIA] and the Yakima Indian Nation." [Emphasis added.]

■ Having determined Mrs. Slockish's suit against the Government to be a "claim against the government," governed by 31 U.S.C. § 3727, the issue becomes whether Mr. Gray, in allegedly promising plaintiff to issue a joint-payee check, waived the requirements of the Anti–Assignment Act so as to render the assignment valid.

The Court of Claims in *Tuftco Corp. v. United States*, 222 Ct.Cl. 277, 287–88, 614 F.2d 740, 746 (1980), discussed waiver of the application of the Anti–Assignment Act by a Government contracting officer. In *Tuftco*, the Government contended that waiver of some of the Act's requirements did not affect application of the remainder of the Act's provisions. The Government's position was that, although the contracting officer had released plaintiff from compliance with part of the Act, since the assignee did not comply with the notice requirements of the Act, the assignment was invalid and therefore did not bind the Government.

This argument was clearly rejected by the Court, which explained that waiver of the Act amounted to a waiver of the entire Act as a whole, rather than specific provisions:

> [A]s often as this court has stated the Government may waive the Anti–Assignment Act and recognize an assignment, it has never intimated waiver of the Act is nevertheless conditional upon fulfillment of certain provisions of the Act. Recognition encompasses waiver of the entire Act; recognition of an assignment is not,

as the defendant argues, simply another exception to the Act, * * *.

614 F.2d at 746.

■ This Court acknowledges a number of district court decisions to the contrary, holding that "the Anti–Assignment Act may not be waived by agents of the Government in advance of allowance of the claim which is the subject of the assignment." *Knight v. United States*, 596 F.Supp. 540, 542 (M.D.Ga.1984), *aff'd*, 762 F.2d 1022 (11th Cir.1985), *citing United States v. Shannon*, 186 F.2d 430, 432–33 (4th Cir.1951), *rev'd on other grounds*, 342 U.S. 288, 72 S.Ct. 281, 96 L.Ed. 321 (1952); *Marger v. Bell*, 510 F.Supp. 9, 12–13 (D.Maine 1980); *Augusta Aviation, Inc. v. United States*, 671 F.2d 445, 449 (11th Cir. 1982). This Court, however, must follow the precedent of the Court of Claims. *Tuftco* squarely addresses and decides the waiver issue that is now before this Court.

While *Tuftco* affirmed prior Court holdings that the Government may, through its actions, waive the requirements of the Anti–Assignment Act, it expressed uncertainty as to what conduct amounted to such a waiver. In that case, plaintiffs were the assignees to a contract with the Government for the latter's purchase of mobile homes. Plaintiff complained that the Government, though it had recognized the assignment from the original contractor to plaintiff, nonetheless erroneously paid the original contractor for work properly performed by plaintiff. Although the Court compared the statutory provisions for the assignment of claims versus contracts, it recognized an identical public policy behind the two statutes, and did not further distinguish them on the issue of Government conduct amounting to a waiver. In the *Tuftco* case, the assignment of the contract to plaintiff necessarily incorporated the assignment of any monetary claims arising against the Government for the performance of work by plaintiff.

In *Tuftco*, the Government official's advice was sought as to the validity of the assignment, and the contracting officer assured both parties that, despite the Anti-Assignment Act, the assignments were val-

id, and payment would go to plaintiff. The contracting officer also acknowledged the assignment in writing. The Court found that, in the totality of the circumstances, the contracting officer's conduct amounted to an assent to the arrangement.

The *Tuftco* Court declined to identify a single particular act as constituting recognition of the assignments. Instead, it looked to the totality of the circumstances and found "recognition of the assignments by [the contracting officer's] knowledge, assent, and actions[s] consistent with the terms of the assignments." *Tuftco*, 614 F.2d at 746. The Court noted that evidence of extensive course of dealing between the Government and the assignee would have further supported plaintiff's case. In its review of the Government's actions, the Court also favorably compared the *Tuftco* facts with those in *G.L. Christian & Assoc. v. United States*, 160 Ct.Cl. 1, 312 F.2d 418, *cert. denied*, 375 U.S. 954, 84 S.Ct. 444, 11 L.Ed.2d 314 (1963), which more strongly supported the same conclusion. The Court also determined that the contracting officer with whom the parties dealt possessed the necessary authority to recognize an assignment that did not meet statutory requirements. *Tuftco*, 614 F.2d at 746.

The issue this Court faces is precisely that which the *Tuftco* Court decided: "whether in this case the actions of the Government, manifested [by Don Gray, BIA official], indicated its consent to and recognition of the assignment[s]." *Id.* at 745.

Unlike the facts in *Tuftco*, the facts in this case do not establish "ample support for the conclusion the Government was aware of, assented to, and recognized the assignment[s]." *Id.* Allowing plaintiff a favorable inference that Don Gray was authorized to waive the Anti–Assignment Act, there is insufficient evidence in the record to support a factual finding that Mr. Gray waived the applicability of the Act. Plaintiff simply alleges that he was "told by Don Gray that a joint payee check would be made if a notarized authorization was received by the BIA." The record does not suggest any other actions by the Government to support a finding of the latter's recognition of and assent to the assignment. Considering all the circumstances, the Court finds that the alleged statement made by Mr. Gray, in the absence of any written acknowledgement, and in the face of actions inconsistent with the alleged oral promise, is not sufficient evidence to support a finding of statutory waiver by the Government.

■ Thus, the issue becomes whether, in the absence of a waiver of the Anti–Assignment Act, the assignment met the Act's requirements to render the assignment in issue valid and binding on the Government. It did not.

The definition of "assignment" and the requirements of the Act are as follows:

(a) In this section, "assignment" means—

(1) a transfer or assignment of any part of a claim against the United States Government or of an interest in the claim; * * *

(b) An assignment may be made only after a claim is allowed, the amount of the claim is decided, and a warrant for payment of the claim has been issued. The assignment shall specify the warrant, must be made freely, and must be attested to by 2 witnesses. * * *

31 U.S.C. § 3727 (1982).

Mrs. Slockish's claim against the Government was allowed on April 29, 1986, when the Comptroller General issued an opinion ordering the seized funds to be returned to her. The purported assignment was dated March 5, 1986, more than one month before the claim was allowed. In this regard, the Anti–Assignment Act was not followed.

Contrary to the provisions of the Act, the assignment did not specify the warrant, nor was it attested to by two witnesses as the statute explicitly requires; nor did the notary public's certification state that she completely explained the assignment at the time it was acknowledged.

The assignment at issue was not executed in accordance with the Act's statutory requirements. Therefore, Mrs. Slock-

ish's assignment of her claim was not valid to bind the Government.

Indeed, the Court of Claims in *Kearney v. United States*, 152 Ct.Cl. 202, 207, 285 F.2d 797, 800 (1961) stated,

> a contract between an attorney and a client which gives the attorney an interest in the client's claim against the Government is exactly what the anti-assignment statute forbids. * * * This was precisely the evil the Congress intended to outlaw by the anti-assignment statute.

*Id.*

The Anti–Assignment statute was enacted primarily to prevent third parties, such as plaintiff, not in privity of contract with the Government, from "acquiring an enforceable interest in a claim against it." *Pittman v. United States*, 127 Ct.Cl. 173, 180, 116 F.Supp. 576, 580 (1953).

The Court of Appeals for the Federal Circuit recently decided a case dealing with an attorney fee award under the Civil Service Reform Act (CSRA). *See Jensen v. Dept. of Trans.*, 858 F.2d 721 (Fed.Cir. 1988). The issue was whether the Merit Systems Protection Board should pay an attorney fee award under the CSRA to the attorney or to the client. The court held that the award was properly payable to the attorney.

The issue before this Court is different from that before the Appeals Court in *Jensen*. Here, the payment by the BIA was not an award of attorney fees governed by the CSRA; rather, it was payment of Mrs. Slockish's claim. Mrs. Slockish did not pursue relief for attorney fee expenses under any federal statute or regulation. Plaintiff's causes of action here for breach of contract and violation of an authorized promise to issue a joint-payee check, therefore, are not controlled by the *Jensen* case.

## Conclusion

Plaintiff pursues relief in this Court under two legal theories, both of which must fail. Plaintiff first alleges breach of an agreement made between plaintiff and Mr. Gray of the BIA. Plaintiff has alleged no consideration for Mr. Gray's promise other than detrimental reliance, discussed *supra*, nor does the party's supporting documentation indicate that anything of a contractual nature was exchanged in return for Mr. Gray's alleged promise. Plaintiff's first cause of action must be dismissed pursuant to Rule 12(b)(1) RUSCC.

Secondly, plaintiff alleges that Mr. Gray's promise to pay a joint-payee check was made pursuant to his authority, and the Government's violation of this promise entitles plaintiff to that amount due him from Mrs. Slockish. Assuming Mr. Gray possessed the requisite authority to recognize the assignment, the Court finds that the statutory requirements governing the assignment were not waived by Mr. Gray, and that the requirements of the statute were not followed. Therefore, Mrs. Slockish's assignment to plaintiff of attorney fees is not binding on the Government. A motion for summary judgment under Rule 56 RUSCC will be granted when it appears from the pleadings that no genuine issue as to any material fact exists, and that such facts entitle the moving party to judgment as a matter of law. RUSCC 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Cooper v. Ford Motor Co.*, 748 F.2d 677 (Fed.Cir. 1984). All inferences must be viewed in the light most favorable to the non-moving party. *Adickes v. Kress & Co.*, 398 U.S. 144, 158–59, 90 S.Ct. 1598, 1609, 26 L.Ed.2d 142 (1970).

The Court has allowed plaintiff all favorable inferences and concludes that the law, as applied to the facts alleged in plaintiff's complaint, requires that defendant's 12(b)(1) motion on plaintiff's breach of contract action, and its Rule 56(c) motion on statutory violation must be granted. The Clerk is directed to dismiss the complaint. No costs.

## APPENDIX A

### COMPLAINT

Filed Oct. 13, 1987

Plaintiff alleges:

**1.**

Plaintiff is a duly licensed attorney admitted to practice in the State of Oregon, and before the Department of Interior and Bureau of Indian Affairs.

**2.**

On August 20, 1985, plaintiff was retained to represent Linda Slockish and Ray Slockish to prosecute claims that they had against the Department of Interior and the Bureau of Indian Affairs. A copy of the contingent fee agreement is attached hereto and incorporated by reference. On the 29th day of April, 1986, the claims of Mr. and Mrs. Slockish were settled and they were awarded $19,457.26. The settlement determined the amount of the claim that the Slockishes had against the Department of Interior and the Bureau of Indian Affairs. Thereafter a warrant for payment of the claim was duly issued. Each of the claims was witnessed by two witnesses, to-wit: the claim of Linda Slockish was witnessed by Raymond Slockish and plaintiff, the claim of Raymond Slockish was witnessed by Linda Slockish and plaintiff. The warrant issued is Controller General Opinion No. B–219235, and dated April 29, 1986.

**3.**

Thereafter, on March 10, 1986, the plaintiff forwarded a copy of the contingent fee agreement, together with the assignment. The Assignment is attached as Exhibit 2. Nevertheless, the government failed, refused, and neglected to pay over plaintiff's share of the claim of the Slockishes and there is currently due from the defendant to the plaintiff, the sum of $6,485.42.

WHEREFORE, plaintiff prays for judgment against the defendant in the sum of $6,485.42.

DATED: <u>10–8–87.</u>

/s/Evelyn Conroy Sparks
EVELYN CONROY SPARKS
JOLLES, SOKOL & BERNSTEIN
Attorney for Plaintiff
721 SW OAK STREET
PORTLAND, OR 97205
PHONE: (503) 228-6474

EXHIBIT 1
CONTINGENT FEE
ATTORNEY–CLIENT
AGREEMENT

The undersigned, Client, hereby retains Jack L. Schwartz, Lawyer, to prosecute Client's claim against <u>Dept. of Interior and Bureau of Indian Affairs,</u> and agrees that the Lawyer is empowered to perform such services as he deems appropriate on behalf of the Client.

As compensation for the services of the Lawyer, the Client agrees to pay a fee contingent upon any amount collected by the Lawyer for the Client, as follows:

| | |
|---|---|
| Case settled without filing action, suit, or demand for arbitration | 33.3% |
| After such filing, but before day of trial | 35 % |
| Day of, during, or after trial | 40 % |
| During or after appeal to a higher court | 50 % |

Court costs, other necessary expenses and all medical expenses incurred are to be paid by the Client; if any of them have been advanced by the Lawyer, he shall be reimbursed. The Lawyer is authorized to pay any of said expenses out of the share of the settlement accruing to the Client.

Dated this <u>20</u> day of <u>August,</u> 19<u>85.</u>

(s) <u>Jack L. Schwartz</u>
JACK L. SCHWARTZ

(s) <u>Linda Slockish</u>
CLIENT

(s) Ray Slockish, Sr.

EXHIBIT 2

Mrs. Linda Slockish

Route 1, Box 67

Harrah, WA 98933

Ronald Brown
Portland Area Office
Bureau of Indian Affairs
Portland, OR 97208
Don Gray
Branch of Finance

**192**

■■■■■■■■■■■

■■■■■■■■

Albuquerque, N.M.

This is an authorization of attorney Jack L. Schwartz to act in my behalf regarding my claim against the Bureau of Indian Affairs and the Yakima Indian Nation. It is my desire that Mr. Schwartz be allowed to demand payment of all moneys owed, with interest and attorney's fees in this matter, and that he is authorized to receive said payment in the form of a joint payee draft.

(s) Linda Slockish 3-5-86
LINDA SLOCKISH

(s) Raymond Slockish 3-5-86
RAYMOND SLOCKISH

Signed and sworn to before me this 5 day of March 1986.

(s) Genevieve J. Frank
Notary Public
State of Washington
GENEVIEVE J. FRANK
NOTARY PUBLIC
STATE OF WASHINGTON
My Commission Expires JAN 13, 1988

AMENDED COMPLAINT

Plaintiff alleges:

1.

Plaintiff is a duly licensed attorney admitted to practice in the State of Oregon, and before the Department of Interior and the Bureau of Indian Affairs (BIA).

2.

Jurisdiction is proper in the Court of Claims pursuant to 28 U.S.C. § 1491(a)(1).

3

In 1977 the BIA illegally seized funds from Linda and Ray Slockish without cause or due process. Plaintiff, acting on behalf of the Slockishes, made demand on the BIA for return of the illegally seized funds.

4

On or before January 6, 1986, plaintiff contacted the Albuquerque, New Mexico office of the BIA and was told by Don Gray that a joint payee check would be made if a notarized authorization was received by the BIA. Don Gray was acting in the course and scope of his employment with the government and was authorized to approve said joint payment. Plaintiff relied on Gray's statement and did not otherwise secure his right to a share of the Slockishes' funds.

5.

The Slockishes authorized the plaintiff to receive up to one-third of the erroneously held funds if plaintiff secured the return of those funds. On March 5, 1986, plaintiff sent the BIA notarized authorization which assigned the rights to the returned funds to plaintiff.

6.

On April 29, 1986, the Comptroller General issued an opinion ordering the seized funds returned to Slockish in the total sum of $19,457.26, including interest. On or about May 8, 1987, Ron Brown sent a letter to plaintiff breaching the government's agreement to send a joint payee check. Plaintiff brings this claim against the government for failing, neglecting, and refusing to pay over plaintiff's share of the illegally seized funds in violation of its agreement to do so.

WHEREFORE, plaintiff prays for judgment against the defendant in the sum of $6,485.75, representing one-third of the amount of funds returned to the Slockishes.

DATED: March 3, 1988.

/s/Evelyn Conroy Sparks
EVELYN CONROY SPARKS
Attorney for Plaintiff
JOLLES, SOKOL & BERNSTEIN
721 SW OAK STREET
PORTLAND, OR 97205
PHONE: (503) 228-6474