**PITTMAN v. UNITED STATES.**
No. 66–53.

United States Court of Claims.
Dec. 1, 1953.

William Daniel Patton, Johnstown, Pa., Pittman & Roberts, Washington, D. C., on the briefs, for plaintiff.

Walter Kiechel, Jr., Washington, D. C., Warren E. Burger, Asst. Atty. Gen., Gilbert E. Andrews, Washington, D. C., on the brief, for defendant.

WHITAKER, Judge.

Plaintiff alleges that he is entitled to recover the sum of $48,242.23 with interest on this amount from June 29, 1950, on the ground that he has an attorney's lien against an award made by the Appeal Board, Office of Contract Settlement, to plaintiff's client, the West Side Iron Works (hereinafter sometimes referred to as West Side). The case is now before us on defendant's motion to dismiss the petition, on the grounds, among others, that there is no privity between plaintiff and defendant, and that an attorney's lien does not attach to a claim against the United States because of the anti-assignment statute, among other reasons.

From the allegations of the petition and documents attached thereto, it appears that plaintiff was employed on December 1, 1946, by the West Side Iron Works as its attorney to prosecute a claim for relief under section 17(a) of the Contract Settlement Act of 1944, 58 Stat. 665, 41 U.S.C.A. § 117(a). Plaintiff's firm, Pittman & Roberts, was to receive a fee of 15 per cent of the amount of any award made. The agreement between plaintiff and his client, a copy of which is attached to and made a part of the petition, consists of a letter dated March 11, 1949, from the managing partner of West Side to plaintiff. It reads in part as follows:

"Reference is made to our conversations concerning our claim against the U. S. Maritime Commission growing out of losses sustained in carrying out their deck cargo program during World War II. It is my desire that your firm handle this case and prosecute it to a logical conclusion.

"For the services to be rendered by your firm the West Side Iron Works agrees to pay the following fee:

"(1) Pay to Pittman & Roberts a fee of fifteen per cent of the total amount recovered on this claim from the U. S. Maritime Commission. This portion of the fee shall be paid from proceeds recovered from the U. S. Maritime Commission. * * * *"

Plaintiff took an active, personal part in the preparation and prosecution of West Side's claim, and on June 29, 1950, the Board made an award to West Side against the Maritime Administration [1] in the amount of $321,614.93. Plaintiff alleges that the fee contract created in his favor an attorney's lien against the award from the time it was made.

Subsequent to the award, plaintiff brought to the attention of the Appeal

---

[1] Some of the functions of the Maritime Commission were transferred to the Maritime Administration, Department of Commerce, by Reorganization Plan No. 21 of 1950, 15 F.R. 3178, 64 Stat. 1273.

See 46 U.S.C.A. § 1111, note. Use of the term Maritime Administration herein is to be understood as referring to the Maritime Commission, where appropriate.

Board the fee agreement which he had with West Side, and informally requested that the Board recognize his lien. The Board advised plaintiff that it could afford him no relief even if the matter were formally presented to it. Plaintiff also advised the Maritime Administration of his fee arrangement with West Side, and demanded that his lien be recognized and satisfied from the award granted West Side by the Board. Plaintiff was informed by the Maritime Administration that it had no authority to recognize plaintiff's claim, and his request was denied. Plaintiff also conferred with officials of the Department of Justice, demanding that his attorney's lien be recognized and satisfied from the amount of the award, but was advised that the Department of Justice, in the absence of a specific lien statute, could not recognize plaintiff's claim and could not authorize payment of plaintiff's fee from the award.

Then, under date of September 19, 1950, the Maritime Administration forwarded to West Side a voucher in the amount of $321,614.93 and requested that one of the copartners sign it and return it to the Maritime Administration in order that the award entered by the Appeal Board in favor of West Side might be satisfied. On plaintiff's advice, Joseph Yellen, managing partner of West Side, executed the voucher and forwarded it to plaintiff, to be held by him pending the recognition and satisfaction of his attorney's lien.

On or about February 23, 1951, Newell A. Clapp, Acting Assistant Attorney General, advised plaintiff that he had directed the Maritime Administration to offset the entire amount of the award made to West Side by the Appeal Board against West Side's renegotiation liabilities[2] as of December 12, 1950, pursuant to the terms of an agreement entered into on February 19, 1951, between representatives of the Department of Justice and of West Side. This agreement, made without plaintiff's knowledge, pro-

vided that the United States would immediately lift a withholding order against other funds due West Side, in exchange for West Side's consent to the offset.

Subsequently, the Maritime Administration, at the direction of the Department of Justice and after having been advised of the fee agreement between plaintiff and West Side, offset the total amount of the award of $321,614.93 against the renegotiation liabilities of West Side as of December 12, 1950. At the same time it lifted a withholding order against other funds due West Side, and has since paid these other funds to West Side. Plaintiff alleges that this action was taken in a deliberate attempt to deprive plaintiff of his lien rights.

It is defendant's position (1) that there is no Federal statute under which attorney's liens may be recognized; (2) that Federal funds are not subject to local lien laws; (3) that the lien here asserted is a nullity under the provisions of the Anti-Assignment Act, Rev.Stat. § 3477, 10 Stat. 170, as amended, 31 U.S.C.A. § 203; and (4) that in any event the Court of Claims is without jurisdiction to enforce an attorney's lien in an independent proceeding against the United States because of lack of privity of contract between plaintiff and defendant, and because an attorney's lien can only be enforced by an equity proceeding, and that this court has no such jurisdiction.

Plaintiff's contentions, broadly stated, are that he has a valid attorney's lien on the award to West Side; that this lien has priority over the claim of the United States based on renegotiation liabilities and should be satisfied prior to any offsets; and that the court has jurisdiction to entertain and enforce plaintiff's claim.

We think defendant's contention that the lien here asserted is a nullity under the provisions of the Anti-Assignment Act, supra, is correct; if so, it is dispositive of the case, other questions aside.

2. Plaintiff concedes in a supplemental brief that these arose prior to the commence-

ment of the action from which he alleges a lien arose.

■ It has long been the law in the District of Columbia that an attorney's lien is, with exceptions not here material, a creature of contract, and "it is indispensable that there exist between the client and his attorney an agreement from which the conclusion may reasonably be reached that they contracted with the understanding that the attorney's charges were to be paid out of the judgment covered." Pink v. Farrington, 67 App.D.C. 314, 92 F.2d 465, 467, certiorari denied 302 U.S. 741, 58 S.Ct. 143, 82 L. Ed. 572. There must be, it has been said, a distinct appropriation of the fund by the client and an agreement that the attorney should be paid out of it. Wright v. Ellison, 1 Wall. 16, 17 L.Ed. 555; Ingersoll v. Coram, 211 U.S. 335, 368, 29 S.Ct. 92, 53 L.Ed. 208; Lyman v. Campbell, 87 U.S.App.D.C. 44, 182 F. 2d 700; Pink v. Farrington, supra; Lindberg v. Humphrey, 53 App.D.C. 243, 289 F. 901.

■ Where these conditions are met, as they would seem to be in the present case, it is generally held that the agreement creates an equitable interest in the attorney's favor in the proceeds of the claim. Barnes v. Alexander, 232 U.S. 117, 34 S.Ct. 276, 58 L.Ed. 530; Wardman v. Leopold, 66 App.D.C. 111, 85 F. 2d 277, 106 A.L.R. 1487, certiorari denied 299 U.S. 570, 57 S.Ct. 33, 81 L.Ed. 420; cf. Conlon v. Adamski, 64 App.D.C. 274, 77 F.2d 397. This interest has been termed an equitable lien against the fund, Wardman v. Leopold, supra; an interest in the cause of action in the nature of an equitable lien, Kellogg v. Winchell, 51 App.D.C. 17, 20, 273 F. 745, 16 A.L.R. 1159; and by other courts in similar circumstances an equitable assignment or an equitable assignment *pro tanto.* See Woodbury v. Andrew Jergens Co., 2 Cir., 69 F.2d 49, 50, and see annotation, 143 A.L.R. 206 et seq.

Call it an attorney's lien, an equitable interest, or by any other name, the contract between plaintiff and his client gave over to plaintiff an interest in his client's claim against the Government. This was

what the Anti-Assignment statute forbade. The statute reads:

"§ 203. *Assignments of claims;* \* \* \*

"All transfers and assignments made of any claim upon the United States, or of any part or share thereof, or interest therein, whether absolute or conditional, and whatever may be the consideration therefor, and all powers of attorney, orders, or other authorities for receiving payment of any such claim, or of any part or share, thereof, shall be absolutely null and void, *unless they are freely made and executed in the presence of at least two attesting witnesses, after the allowance of such a claim, the ascertainment of the amount due, and the issuing of a warrant for the payment thereof.* Such transfers, assignments, and powers of attorney, must recite the warrant for payment, and must be acknowledged by the person making them, before an officer having authority to take acknowledgements of deeds, and shall be certified by the officer; and it must appear by the certificate that the officer, at the time of the acknowledgement, read and fully explained the transfer, assignment, or warrant of attorney to the person acknowledging the same. \* \* \*" [Italics ours.]

■ The agreement with which we are here concerned did attempt to create in plaintiff an interest in the proceeds of the claim asserted on behalf of the client against the United States, as security for the payment of plaintiff's fee. "In effect or by its operation it transferred or assigned to the attorney, in advance of the allowance of the claim, such an interest as would secure the payment of the fee stipulated to be paid." Nutt v. Knut, 200 U.S. 12, 20, 26 S.Ct. 216, 219, 50 L.Ed. 348.

The cited case concerned a contract which provided that an attorney should receive, for the prosecution of a claim against the Government, "a sum equal to

33⅓ per cent of the amount which may be allowed on said claim, the payment of which is hereby made a lien upon said claim and upon any draft, money, or evidence of indebtedness which may be issued thereon." Id., 200 U.S. at page 13, 26 S.Ct. at page 217. Subsequent to the allowance of the claim and payment of the amount due to the claimant, the attorney sued the claimant on the contract for the stipulated fee. The Supreme Court held that the contract did not give the attorney any interest or share in the claim itself, created no lien upon the claim, and to the extent that it purported to do so was null and void as contravening the provisions of the statute. The Court said:

> "* * * In giving that lien from the outset, before the allowance of the claim, and before any services had been rendered by the attorney, the contract, in effect, gave him an interest or share in the claim itself and in any evidence of indebtedness issued by the government on account of it. In effect or by its operation it transferred or assigned to the attorney, in advance of the allowance of the claim, such an interest as would secure the payment of the fee stipulated to be paid. All this was contrary to the statute; for its obvious purpose, in part, was to forbid anyone who was a stranger to the original transaction to come between the claimant and the government, prior to the allowance of a claim, and who, in asserting his own interest or share in the claim, pending its examination, might embarrass the conduct of the business on the part of the officers of the government. We are of opinion that the state court erred in holding the contract, on its face, to be consistent with the statute."

In the case at bar, plaintiff's suit is not against the claimant, but against the United States. If the assignment is void as between the attorney and his client, a fortiori, it is void as between the attorney and the Government.

The Court held, however, that the agreement to pay the attorney a sum equal to 33⅓ percent of the amount allowed on the claim could stand alone and was not in violation of the statute. "Such an agreement did not give the attorney any interest or share in the claim itself, nor any interest in the particular money paid over to the claimant by the government. It only established an agreed basis for any settlement that might be made, after the allowance and payment of the claim, as to the attorney's compensation." Id., 200 U.S. at page 21, 26 S.Ct. at page 220.

This case stands for the broad principle that any attempt to impress a lien upon the proceeds of a claim against the United States as security for the payment of an attorney's fee is within the ends to which the prohibition of Rev. Stat. § 3477, supra, was aimed.

The more recent case of Martin v. National Surety Co., 300 U.S. 588, 57 S.Ct. 531, 81 L.Ed. 822, says that the Anti-Assignment statute was enacted for the sole benefit of the United States, and where the enforcement of an assignment is for the benefit of the United States, the Anti-Assignment statute does not stand in the way; nor does it stand in the way where the Government has no interest in whether or not the assignment is enforced, as in a case where the money has already been paid by the Government and the Government has been released from liability. This case somewhat relaxes the rule of Nutt v. Knut, supra, but it does this plaintiff no good, for here the Government has an interest in the enforcement of the assignment because the effort here is to hold the Government liable on the assignment. The Anti-Assignment statute was enacted for the purpose of preventing third parties, with whom the Government was not in privity, from acquiring an enforceable interest in a claim against it. One of the purposes of the statute, said the Supreme Court in another case, was "to prevent possible multiple payment of claims, to make unnecessary the investigation of alleged as-

signments, and to enable the Government to deal only with the original claimant." United States v. Aetna Casualty & Surety Co., 338 U.S. 366, 373, 70 S.Ct. 207, 211, 94 L.Ed. 171. Another purpose is the saving "to the United States [of] 'defenses which it has to claims by an assignor by way of set-off, counter claim, etc., which might not be applicable to an assignee.'" Grace, to Use of Grangers Mut. Ins. Co., v. United States, D. C., 76 F.Supp. 174, 175, quoted in United States v. Shannon, 342 U.S. 288, 291–292, 72 S.Ct. 281, 284, 286, 96 L.Ed. 321.

The present case, we think, presents a situation squarely within the evils Congress intended to outlaw by the Anti-Assignment statute.

In view of the conclusion we have reached we do not pass upon the other issues raised by defendant.

For the reasons indicated, defendant's motion is granted, and plaintiff's petition is dismissed.

It is so ordered.

JONES, Chief Judge, and MADDEN and LITTLETON, Judges, concur.