**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

UNITED STATES OF AMERICA, AKA
Seal A,

*Plaintiff-Appellant*,

v.

CHRISTOPHER KIM, AKA Chris Kim,
AKA KJ Kim, AKA Kyung Joon
Kim; BORA LEE; OPTIONAL
CAPITAL, INC., AKA Optional
Ventures; FIRST STEPHORA AVENUE,
INC.; ERICA M. KIM; ALEXANDRIA
INVESTMENT, LLC; SE YOUNG KIM;
YOUNG AI KIM,

*Claimants-Appellees*,

LAW OFFICE OF ERIC HONIG,
*Intervenor-Appellee*,

and

475 MARTIN LANE, BEVERLY HILLS,
CALIFORNIA, Real Property Located
at, AKA Seal A,

*Defendant*.

No. 12-56922

D.C. No.
2:04-cv-02788-
ABC-PLA

UNITED STATES OF AMERICA,
*Plaintiff-Appellant*,

v.

CHRISTOPHER KIM, AKA Chris Kim, AKA KJ Kim, AKA Kyung Joon Kim; BORA LEE; OPTIONAL CAPITAL, INC., AKA Optional Ventures; FIRST STEPHORA AVENUE, INC.; ERICA M. KIM; ALEXANDRIA INVESTMENT, LLC; SE YOUNG KIM; YOUNG AI KIM,
*Claimants-Appellees*,

LAW OFFICE OF ERIC HONIG; ERIC HONIG,
*Intervenors-Appellees*,

and

475 MARTIN LANE, BEVERLY HILLS, CALIFORNIA, Real Property Located at, AKA Seal A,
*Defendant*.

No. 13-55555

D.C. No.
2:04-cv-02788-
ABC-PLA

UNITED STATES OF AMERICA,
*Plaintiff-Appellant*,

v.

CHRISTOPHER KIM, AKA Chris Kim, AKA KJ Kim, AKA Kyung Joon Kim; BORA LEE; OPTIONAL CAPITAL, INC., AKA Optional Ventures; FIRST STEPHORA AVENUE, INC.; ERICA M. KIM; ALEXANDRIA INVESTMENT, LLC; SE YOUNG KIM; YOUNG AI KIM,
*Claimants-Appellees*,

LAW OFFICE OF ERIC HONIG; ERIC HONIG,
*Intervenors-Appellees*,

and

475 MARTIN LANE, BEVERLY HILLS, CALIFORNIA, Real Property Located at,
*Defendant*.

No. 13-55556

D.C. No.
2:04-cv-02788-
ABC-PLA

OPINION

Appeal from the United States District Court
for the Central District of California
Audrey B. Collins, District Judge, Presiding

Argued and Submitted
March 2, 2015—Pasadena, California

Filed August 13, 2015

Before: Stephen Reinhardt, N. Randy Smith,
and Andrew D. Hurwitz, Circuit Judges.

Opinion by Judge N.R. Smith

## SUMMARY*

**Anti-Assignment Act**

The panel vacated the district court's order awarding attorneys' fees, pursuant to the Civil Asset Forfeiture Reform Act ("CAFRA"), directly to the Law Office of Eric Honig because the Anti-Assignment Act applied to void an assignment in the parties' representation agreement; vacated the district court's post-judgment orders awarding additional fees; and remanded for further proceedings.

In the underlying action, Honig represented claimants who sought properties that were seized by the United States government, and the district court entered summary judgments in favor of the claimants. The district court found that the claimants were prevailing parties under CAFRA, and awarded attorneys' fees against the government.

The panel held that the government was not estopped from asserting the Anti-Assignment Act.

---

* This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

The panel held that the Anti-Assignment Act prohibited a claimant from assigning an award of attorneys' fees under CAFRA to his attorney. The panel concluded that the Anti-Assignment Act invalidated the assignment of the award of attorneys' fees against the United States from the claimant to his attorney. The panel further held that the Act does not prevent an attorney from taking an interest in the fees that is effective against the government; it merely forbids an assignment of the right to be paid directly from the United States Treasury.

## COUNSEL

Melissa Briggs, (argued), John E. Lee, Monica E. Tait, Assistant United States Attorneys, Thomas J. Clark, Supervisory Attorney, Gilbert S. Rothenberg, Deputy Assistant Attorney General, Kathryn Keneally, Assistant Attorney General, for Plaintiff-Appellant United States of America.

Eric Honig (argued), Law Offices of Eric S. Honig, Marina Del Rey, California, for Intervenors-Appellees.

John D. Cline, San Francisco, California, for Amicus Curiae National Association of Criminal Defense Lawyers.

## OPINION

N.R. SMITH, Circuit Judge:

Christopher Kim and members of his family defeated the Government's attempts to forfeit property seized in connection with a criminal investigation. Thereafter, Kim received several significant awards of attorney's fees. Eric Honig, Kim's lawyer, asked the district court that he be paid those fees directly, pursuant to an assignment in their representation agreement. The Government asserts that the Anti-Assignment Act, 31 U.S.C. § 3727, voids such an assignment.

We agree that the Anti-Assignment Act invalidates an assignment of an award of statutory attorney's fees against the United States from the claimant to his attorney. However, the Anti-Assignment Act goes no further. The Act does not prevent an attorney from taking an interest in the fees that is effective against the Government; it merely forbids an assignment of the right to be paid directly from the United States Treasury. We have jurisdiction under 28 U.S.C. § 1291, and we vacate and remand for further proceedings.

## BACKGROUND

Pursuant to a request for extradition from the Republic of Korea, where Kim was charged with fraudulently obtaining funds from companies that he controlled (DAS Corp. and Optional Capital), the Government seized the properties at issue in this case. *See United States v. Real Prop. Located at 475 Martin Lane*, 545 F.3d 1134, 1139 (9th Cir. 2008). Kim, Erica Kim, Bora Lee, Se Young Kim, and Young Ai Kim (the "Kim Claimants") each filed claims to the seized properties.

The district court granted summary judgment to the Kim Claimants. We affirmed in part, holding that "the government failed to present admissible evidence sufficient to demonstrate a triable issue of fact as to whether Kim obtained DAS's money in a fraudulent manner or whether his dealings with Optional Capital were fraudulent." *United States v. Real Prop. Located at 475 Martin Lane*, 298 F. App'x 545, 549 (9th Cir. 2008). However, we remanded for further proceedings regarding certain other properties. *Real Prop. Located at 475 Martin Lane*, 545 F.3d at 1146. On remand, the district court entered summary judgment, dismissing the Government's claims on the remaining properties.[1]

Throughout the proceedings, the Kim Claimants were represented by the Law Office of Eric Honig ("Honig"). The representation agreement between Honig and the Kim Claimants provided that "[a]ny fees the Court orders the government to pay for the work that I perform **belongs to me and not to the clients**, however I will provide a credit to the clients towards my fee agreed upon above for any part of my fee that is paid to me by the government." After the district court's first summary judgment order, the Kim Claimants moved for an award of attorney's fees pursuant to the Civil Asset Forfeiture Reform Act ("CAFRA"). The district court found that the Kim Claimants were the prevailing parties and

---

[1] With the Government's claims dismissed, the Kim Claimants litigated primarily against Optional Capital for ownership of the properties seized pursuant to the fraud investigation. Ultimately, the Kim Claimants released their claims to the property to Optional Capital, and the district court imposed a constructive trust over the seized properties on the grounds that they had been purchased with funds illegally obtained from Optional Capital.

entered a substantial award of attorney's fees against the Government.

Thereafter, the Government filed tax liens against all of the Kim Claimants except Se Young Kim and Young Ai Kim. After the Government filed the tax liens, Honig moved to intervene in the forfeiture action to protect his interest in the award. The district court denied the motion. Subsequently, the Kim Claimants moved for an additional award of attorney's fees for the second summary judgment order and asked that the fees be paid directly to Honig. The district court granted the award, but declined to award the fees directly to Honig, because he was not a party to the forfeiture action.

Honig also filed a wrongful levy action against the Government. The Government moved to dismiss the wrongful levy action, arguing that Honig should instead have intervened in the forfeiture action. Honig then filed a second motion to intervene in that action, which the district court granted. The district court also ordered that the attorney's fees be paid directly to Honig. The Government appealed the order. While that appeal was pending, we decided *United States v. $186,416.00*, 642 F.3d 753 (9th Cir. 2011) ("*$186,416.00 I*"), in which we held that "attorney fees awarded under CAFRA are payable to the claimant, not to claimant's attorney." *Id.* at 754. The parties agreed to remand the case for further proceedings in light of *$186,416.00 I*.

In order to protect his contractual interest in the attorney's fees, Honig filed a lien against the properties seized by the Government. In litigation regarding priority of interests in the seized properties, the district court held that the

Government admitted that Honig's lien had priority over the tax liens. However, with regard to the award of attorney's fees, the Government maintained that the fees belonged to the Kim Claimants, and therefore its tax liens would take priority over any interest that Honig had in the attorney's fees awards. The Government also invoked the Anti-Assignment Act, 31 U.S.C. § 3727, to argue that the assignment of the awards from the Kim Claimants to Honig was ineffective as against the United States.[2]

The district court held that the attorney's fees awards could be paid directly to Honig. The district court interpreted *$186,416.00 I* to allow for the Kim Claimants to assign an award of attorney's fees to Honig. With regard to the Anti-Assignment Act, the district court held that it did not prevent the assignment of the attorney's fees award. The district court also held that the Government had, effectively, waived its statutory right to set off the Kim Claimants' tax liabilities with the fee awards. The Government was therefore left with only its tax liens, which it had previously admitted were inferior in priority to Honig's interest. The district court relied on 26 U.S.C. § 6323(b)(8) to hold that an attorney's lien had priority over a tax lien. Accordingly, there was no reason not to pay the fees directly to Honig.

Following the district court's order, Honig and the Kim Claimants moved for an additional award for fees incurred in litigating the ownership of the fees. The Government failed to respond in the time provided for by the local rules, and the district court entered an order granting the requested fees.

---

[2] The Government did not invoke the Anti-Assignment Act with respect to Kim's parents, Se Young Kim and Young Ai Kim, because no tax liens were filed against them.

The Government filed a Fed. R. Civ. P. 60(b)(1) motion contesting the last award, which the district court denied.

The Government now appeals the district court's order that the attorney's fee awards are payable directly to Honig and the district court's denial of its Rule 60(b)(1) motion.

## DISCUSSION

We review a district court order granting an award of attorney's fees for abuse of discretion. *See Childress v. Darby Lumber, Inc.*, 357 F.3d 1000, 1011 (9th Cir. 2004). The district court's "[u]nderlying factual findings are reviewed for clear error." *Native Vill. of Quinhagak v. United States*, 307 F.3d 1075, 1079 (9th Cir. 2002). "The legal analysis underlying a fee decision is reviewed de novo." *Childress*, 357 F.3d at 1011.

## I.   The Government is not Estopped from Asserting the Anti-Assignment Act

Before reaching the merits of the appeal, we address Honig's and the Kim Claimants' contention that the Government should be estopped from asserting the Anti-Assignment Act. We disagree.

Honig and the Kim Claimants argue that the Government's shifting litigation positions in the district court warrant application of the doctrines of equitable and judicial estoppel. They identify two acts by the Government warranting judicial estoppel: (1) placing tax liens on the seized assets after it lost the forfeiture actions; and (2) opposing Honig's intervention in the forfeiture proceedings, only to reverse course on the eve of summary

judgment in the wrongful levy action and insist that Honig should have intervened in the forfeiture proceedings.

"Judicial estoppel is an equitable doctrine that precludes a party from gaining an advantage by asserting one position, and then later seeking an advantage by taking a clearly inconsistent position." *Hamilton v. State Farm Fire & Cas. Co.*, 270 F.3d 778, 782 (9th Cir. 2001). The doctrine is intended "to protect against a litigant playing 'fast and loose with the courts' by asserting inconsistent positions." *Rockwell Int'l Corp. v. Hanford Atomic Metal Trades Council*, 851 F.2d 1208, 1210 (9th Cir. 1988). When determining whether judicial estoppel is warranted, we look to three factors: (1) "a party's later position must be 'clearly inconsistent' with its earlier position"; (2) whether the party succeeded in its prior position, because "[a]bsent success in a prior proceeding, a party's later inconsistent position introduces no 'risk of inconsistent court determinations'"; and (3) "whether the party seeking to assert an inconsistent position would derive an unfair advantage or impose an unfair detriment on the opposing party if not estopped." *New Hampshire v. Maine*, 532 U.S. 742, 750–51 (2001) (citations omitted).

The Government's decision to pursue tax liens after losing the forfeiture action is not inconsistent with its initial decision to seek civil forfeiture of the Kim Claimants' assets. Even if the positions were inconsistent, the Government failed to forfeit the seized assets, so there is no risk of inconsistent court determinations.

Whether the Government's shifting positions with regard to Honig's right to intervene merit judicial estoppel presents a closer question. The Government's positions were clearly

inconsistent, and the Government initially succeeded in convincing the district court that Honig should not be allowed to intervene. Honig incurred additional costs from the Government's shifting positions, as he was forced to litigate the wrongful levy action up to summary judgment. Indeed, the district court strongly chastised the Government for its actions.[3] However, the judicial estoppel doctrine only prevents the offending party from gaining an unfair advantage by his litigation tactics. *See Hamilton*, 270 F.3d at 782. The propriety of Honig's intervention is not relevant to the issues before us, and Honig is in no worse position now than he would have been had he been allowed to intervene originally or if he had continued to litigate the wrongful levy action. It is not clear what benefit the Government has obtained aside from imposing cost and delay. To the extent that Honig seeks a general sanction against the Government, we decline to grant it.

Next, Honig and the Kim Claimants contend that the Government should be judicially estopped from asserting that Christopher Kim and Erica Kim are separate entities from their corporations, because the Government had already

---

[3] The district court noted that the dispute between the Government and Honig "has been marred by an ever-changing set of arguments advanced by the Government both on the merits and procedural aspects of Honig's request for relief. For example, the Government's initial response to Honig's request for an order establishing his priority was an unequivocal statement that lien priority is not properly resolved in this Forfeiture Action. . . . Not surprisingly, that led to more motion work and to the filing of the separate Wrongful Levy Action. The Government maintained this position until the Court was on the brink of deciding cross-motions for summary judgment in the Wrongful Levy Action, at which time it reversed its position, arguing that the priority issues should be resolved in the Forfeiture Action instead."

proven that the corporations were alter egos of the Kims. The effect of estopping the Government would be (if all else fails and only Se Young Kim and Young Ai Kim may receive the attorney's fees awards) to increase Honig's recovery from two-sevenths to two-fifths of the total award. Honig's and the Kim Claimants' contention is flawed under California law. They cite to no California authority for the proposition that, once the veil is pierced, the corporation disappears and becomes the same entity as its owner. Indeed, California has rejected "reverse-piercing" actions that hold an alter ego corporation liable for the actions of its shareholders. *See Postal Instant Press, Inc. v. Kaswa Corp.*, 77 Cal. Rptr. 3d 96, 102–06 (Cal. Ct. App. 2008). California also allows corporations to bring alter ego actions against their shareholders in limited circumstances. *See Ahcom, Ltd. v. Smeding*, 623 F.3d 1248, 1251 (9th Cir. 2010) (permitting alter ego suits by corporations against shareholders in certain bankruptcy situations). In the absence of California precedent demonstrating that an alter ego corporation and its owner are to be treated the same in all respects once the veil is pierced, the Government's positions were not inconsistent and judicial estoppel was not warranted.

Lastly, Honig and the Kim Claimants contend that the Government's assertion of the Anti-Assignment Act should be subject to equitable estoppel based on the Government's filing tax liens against the Kim Claimants. To demonstrate that equitable estoppel is warranted, a party must show:

> (1) the party to be estopped knows the facts, (2) he or she intends that his or her conduct will be acted on or must so act that the party invoking estoppel has a right to believe it is so intended, (3) the party invoking estoppel must

be ignorant of the true facts, and (4) he or she must detrimentally rely on the former's conduct.

*United States v. Hemmen*, 51 F.3d 883, 892 (9th Cir. 1995). Additionally, "[w]hen a party seeks to invoke equitable estoppel against the government [he must show] that the agency engaged in affirmative conduct going beyond mere negligence and that the public's interest will not suffer undue damage." *Id.* (internal quotation marks omitted).

Honig and the Kim Claimaints argue that they litigated the forfeiture action in reliance on the Government not filing tax liens, which they assert the Government knew it could have filed all along. Again, Honig and the Kim Claimants rely on an "abrupt change of position" from the Government. *United States v. Gamboa-Cardenas*, 508 F.3d 491, 504 (9th Cir. 2007). We are unpersuaded. There is no indication in the record that Honig and the Kim Claimants relied on any representation that the Government would not file tax liens against the Kim Claimants. Even if Honig and the Kim Claimants had some basis to believe that the Government would not file tax liens, it is not clear what action they took in reliance on that belief. The Government brought its civil forfeiture action, and the Kim Claimants defended it. Honig and the Kim Claimants cannot even allege that the Government intended to file tax liens against the Kim Claimants before or during the time that it pursued the forfeiture action; they can allege only that the Government was aware of the *possibility* that such liens might be filed. Given that the Kim Claimants were accused of embezzling tens of millions of dollars into the United States, Honig had just as much knowledge as the Government that a tax issue

might arise in the case. Honig's and the Kim Claimant's reliance theory simply does not add up.

We decline to apply judicial or equitable estoppel against the Government.**[4]** Accordingly, we proceed to the merits of the appeal.

## II. The Anti-Assignment Act Applies to and Voids an Award of Attorney's Fees Pursuant to CAFRA

The Government's primary contention on appeal is that the Anti-Assignment Act bars the Kim Claimants from assigning the attorney's fees awards to Honig. Therefore, the primary question before us is whether the Anti-Assignment Act prohibits a claimant from assigning an award of attorney's fees under CAFRA to his attorney. We conclude that it does.

### A. The Anti-Assignment Act

Congress enacted the Anti-Assignment Act in its original form in 1853, primarily as a means "to prevent persons of influence from buying up claims against the United States, which might then be improperly urged upon officers of the Government." *United States v. Aetna Cas. & Sur. Co.*, 338 U.S. 366, 373 (1949). The Act was later recodified as 31 U.S.C. § 3727. The Act prohibits the "assignment of any part of a claim against the United States Government or of an interest in that claim; or the authorization to receive payment

---

**[4]** Because we conclude that estoppel is not warranted, we decline to reach the Government's argument that it cannot be estopped from collecting taxes under the Anti-Injunction Act, 26 U.S.C. § 7421.

for any part of the claim," unless certain conditions are met. 31 U.S.C. § 3727(a)(1)–(2). Those conditions provide that:

> An assignment may be made only after a claim is allowed, the amount of the claim is decided, and a warrant for payment of the claim has been issued. The assignment shall specify the warrant, must be made freely, and must be attested to by 2 witnesses. The person making the assignment shall acknowledge it before an official who may acknowledge a deed, and the official shall certify the assignment. The certificate shall state that the official completely explained the assignment when it was acknowledged.

*Id.* § 3727(b). Under the plain terms of the Act, a claim against the United States may not be assigned to a third party unless these technical requirements are met. "In effect, the [Anti-Assignment Act] serves as a defense that the Government can raise against a claim." *Murkledove v. Astrue*, 635 F.3d 784, 794 (5th Cir. 2011). Indeed, the Government concedes that it is all but impossible for *any* assignment to comply with the strictures of the Anti-Assignment Act, because the Treasury no longer uses warrants. Nevertheless, "[i]t is well established . . . that the Government can waive coverage of the Anti-Assignment Acts." *Riviera Fin. of Tex., Inc. v. United States*, 58 Fed. Cl. 528, 530 (Fed. Cl. 2003).[5] Thus, in modern practice, the

---

[5] Because the Government has the broad power to waive the Act, we reject Honig's and the Kim Claimants's contention that the Government waived the Anti-Assignment Act as to all of the Kim Claimants when it waived the Act towards Se Young Kim and Young Ai Kim. To determine

obsolete language of the Anti-Assignment Act means that the Government has the power to pick and choose which assignments it will accept and which it will not. Although this state of affairs may diverge sharply from what Congress intended when it enacted the Anti-Assignment Act, it is not for us to rewrite the statute or decline to enforce it (as Honig urges) simply because circumstances have changed since it was passed.[6] *See Xi v. INS*, 298 F.3d 832, 839 (9th Cir. 2002) ("[A] decision to rear-range [sic] or rewrite the statute falls within the legislative, not the judicial, prerogative.").

Despite the Anti-Assignment Act's plain language, the Supreme Court has carved out equitable exceptions to its application, noting that the Act "must be interpreted in the light of its purpose to give protection to the Government. . . . [A]ssignments may be heeded, at all events in equity, if they will not frustrate the ends to which the prohibition was

---

whether the Government has waived the Anti-Assignment Act, we look to the Government's "course of conduct" to determine whether "the Government was aware of, assented to, and recognized the assignments." *Tuftco Corp. v. United States*, 614 F.2d 740, 745 (Ct. Cl. 1980). The Government must waive the Act in its entirety; it cannot choose to waive some of its requirements and not others. *See Schwartz v. United States*, 16 Cl. Ct. 182, 188 (1989). Honig and the Kim Claimants provide no authority to suggest that the Government must waive the Anti-Assignment Act towards all claimants in an action, and we have found none. Accordingly, we reject Honig's and the Kim Claimant's assertion that the Government may not assert the Anti-Assignment Act.

[6] We also reject Honig's contention that the Anti-Assignment Act offends the separation of powers. Nothing in the Anti-Assignment Act can be construed as setting conditions on when a court may render a judgment or when that judgment may be considered final. It is solely a prohibition on the right of a claimant to assign a claim against the United States to another.

directed." *Martin v. Nat'l Sur. Co.*, 300 U.S. 588, 596–97 (1937). For instance, the Anti-Assignment Act will not void assignments that arise by operation of law, voluntary transfers by will, or "general assignments for the benefit of creditors." *United States v. Shannon*, 342 U.S. 288, 292 (1952). We have already noted that the Act's primary purpose, when it was originally enacted in the 1850s, was to prevent powerful persons from buying up faulty claims against the government and using their sway to get them paid. *Aetna Cas. & Sur. Co.*, 338 U.S. at 373. Another purpose, more relevant to the modern context, is "to save to the United States 'defenses which it has to claims by an assignor by way of set-off, counter claim, etc., which might not be applicable to an assignee.'" *Shannon*, 342 U.S. at 291–92 (quoting *Grace v. United States*, 76 F. Supp. 174, 175 (D. Md. 1948)).

Because neither Honig nor the Kim Claimants contend that the representation agreement satisfies the Anti-Assignment Act's requirements, the sole question is whether the Act applies to an award of attorney's fees under CAFRA at all. To determine whether the Anti-Assignment Act voids the assignment, we must determine (1) whether an award of attorney's fees under CAFRA is "a claim against the United States"; and, if so, (2) whether the claim "belongs" to Honig or the Kim Claimants. If the Act does apply and the assignment is voided, we must then determine what interest, if any, Honig retains in the awards.

**B. An Award of Attorney's Fees under CAFRA is a Claim Against the United States to which the Anti-Assignment Act Applies**

### 1. A CAFRA Fee Award is a Claim Against the United States

"What is a claim against the United States is well understood. It is a right to demand money from the United States." *Hobbs v. McLean*, 117 U.S. 567, 575 (1886). In determining whether a statutory award of attorney's fees is "a claim against the United States," we note the Supreme Court's broad interpretation of the Anti-Assignment Act: "No language could be broader or more emphatic than these enactments. The words embrace every claim against the United States, however arising, of whatever nature it may be, and wherever and whenever presented." *United States v. Gillis*, 95 U.S. 407, 413 (1877). Consistent with *Hobbs*, a claim is defined as "[t]he aggregate of operative facts giving rise to a right enforceable by a court . . . [t]he assertion of an existing right; any right to payment or to an equitable remedy, even if contingent or provisional . . . [a] demand for money, property, or a legal remedy to which one asserts a right." *Black's Law Dictionary* 281–82 (9th ed. 2009).

An award of statutory attorney's fees is, at base, a right to demand money from the United States. Given the broad construction we are required to give to the Anti-Assignment Act, we see no reason to place statutory attorney's fees awards beyond the reach of the Act.

Honig and the Kim Claimants urge us to make an exception to the applicability of the Anti-Assignment Act for fees awarded under CAFRA. Honig first argues that

forfeiture actions are unique, in that property owners defending civil forfeiture actions from the government are not making claims, they are in essence defending a prosecution. Second, Honig contends that CAFRA is a remedial statute specifically designed to make property owners whole after a wrongful forfeiture, and therefore a request for attorney's fees should not be considered a claim.

We begin with a discussion of CAFRA. The statute was enacted in 2000 as remedial legislation after "widespread criticism" of the previous civil asset forfeiture regime. *United States v. $80,180.00*, 303 F.3d 1182, 1184 (9th Cir. 2002). One element of CAFRA's reforms was to include a fee-shifting provision which, unlike its predecessor the Equal Access to Justice Act ("EAJA"), would be mandatory. 28 U.S.C. § 2465(b)(1). CAFRA states, in relevant part, that "in any civil proceeding to forfeit property . . . in which the claimant substantially prevails, the United States shall be liable for reasonable attorney fees and other litigation costs reasonably incurred by the claimant." *Id.* § 2465(b)(1)(A).

To support their assertion that the Anti-Assignment Act does not reach CAFRA, Honig and the Kim Claimants cite to several civil asset forfeiture cases in which the court rejected the government's assertion of the Anti-Assignment Act. In *United States v. 37.29 Pounds of Semi-Precious Stones*, the district court invalidated a claimant's assignment of its interest in various gemstones seized by the government to a third party, holding that the Anti-Assignment Act barred the assignment. 7 F.3d 480, 483 (6th Cir. 1993), *abrogated on other grounds by United States v. James Daniel Good Real Property*, 510 U.S. 43 (1993). The Sixth Circuit reversed, holding that "the Assignment of Claims Act is not applicable to an assignment of a claim in an in rem forfeiture action. . . .

The claim assigned to Newport was not a 'claim upon the United States, but of an interest in property adverse to the interest held by the United States.'"  *Id*. at 483–84 (quoting *United States v. Currency Totalling $48,318.08*, 609 F.2d 210, 213 (5th Cir. 1980)).  The other cases that Honig cites are substantially similar: in every case the court concluded that the Anti-Assignment Act does not apply to a purported assignment of an interest in the assets subject to the forfeiture proceedings.  The Eighth Circuit stated the reasoning behind this conclusion in *United States v. Thirteen Thousand Dollars in U.S. Currency*: the assignor "did not assign a claim against the United States . . . but rather assigned his 'interest in the property adverse to the interest held by the United States.'" 733 F.2d 581, 584 (8th Cir. 1984), (citation omitted) *superseded by statute on other grounds by* 21 U.S.C. § 881(h); *see also Currency Totalling $48,318.08*, 609 F.2d at 213; *United States v. $22,993.00*, 332 F. Supp. 1277, 1279 (E.D. La. 1971).

The claim asserted here is distinguishable.  In this case, we address the assignment, not of the seized properties themselves, but of the right to receive an award of attorney's fees to be paid out by the United States.  The United States does not, as in *Thirteen Thousand Dollars in U.S. Currency*, hold an adverse interest in that award.  Thus, a claimant's attempt to retrieve their wrongfully seized property is not a claim against the United States.  In contrast, an award of attorney's fees represents a right to be paid the United States's money, wholly consistent with the definition of a "claim" in *Hobbs*.

Honig and the Kim Claimants next argue that the purpose of CAFRA will be frustrated if an award of attorney's fees is considered a claim against the United States or if we do not

find an equitable exception to the Anti-Assignment Act. Given that the purpose of CAFRA is "to give innocent property owners the means to recover their property and make themselves whole," H.R. Rep. No. 105-358(I), at 27 (1997), Honig and the Kim Claimants argue that applying the Anti-Assignment Act would prevent claimants from hiring counsel to contest the wrongful seizure of their assets. This concern is overstated. If the Anti-Assignment Act applies to an award of attorney's fees under CAFRA, it would bar only the assignment (and thus the right to be paid directly by the United States) of the award from the claimant to their counsel. The Anti-Assignment Act does not, and cannot, prohibit the district court from awarding attorney's fees to a prevailing claimant under Section 2465(b)(1)(A).

Nevertheless, the Supreme Court cautions us that, before we apply the Anti-Assignment Act to CAFRA fee awards, we should consider whether applying the Act in this context is consistent with its purposes. *Martin*, 300 U.S. at 596–97. We conclude that applying the Anti-Assignment Act to CAFRA awards is consistent with the purpose of the Act identified by the Supreme Court in *Shannon*, which is "to save to the United States 'defenses which it has to claims by an assignor by way of set-off, counter claim, etc., which might not be applicable to an assignee.'" *Shannon*, 342 U.S. at 291–92 (citation omitted). The Supreme Court has recognized that the Government has the right to offset statutory attorney's fees awards against preexisting debts owed to the United States. *See Astrue v. Ratliff*, 560 U.S. 586, 589 (2010). Here, the parties ultimately dispute the Government's right to offset the Kim Claimants' tax liabilities against the CAFRA awards. Therefore, applying the Anti-Assignment Act to attorney's fees awards under CAFRA would further the purposes of the Act.

The purpose of the Anti-Assignment Act, to preserve defenses to the United States, does not conflict with CAFRA. The right of a claimant to be made whole under CAFRA cannot be taken to mean that the government is forbidden to offset preexisting debts before it pays out a sum of money to a claimant. The government has a right to be made whole as well, and the Anti-Assignment Act allows the government to balance its obligation to make a CAFRA claimant whole against that claimant's debts to the United States. Because CAFRA attorney's fees awards are payable to the client, not to the attorney, as detailed below, the Anti-Assignment Act ensures that the Government preserves its defenses even when an attorney is the beneficiary of the fee award.

### 2. Attorney's Fees Under CAFRA Belong to the Client

In determining whether the Anti-Assignment Act applies in this case, we must decide whether the attorney's fees awards "belong" to the Kim Claimants or to Honig. If the awards belong to and are directly payable to Honig, then the Anti-Assignment Act will not apply, as no assignment will have been necessary to place the awards in Honig's hands. Honig contends that his right to the fee award arose from the representation agreement and vested the moment that the Kim Claimants prevailed against the Government. Honig interprets our precedent to mean that fee awards are an asset of the attorney, not the client. Again, the question before us is not who is ultimately entitled to the fee awards, but whether that award can be paid directly to the attorney from the United States.

In *Astrue v. Ratliff*, the Supreme Court confronted a similar question: whether an award of attorney's fees under

the EAJA could be paid directly to the attorney. 560 U.S. at 589. The attorney in *Ratliff* sought direct payment, because the government asserted a right to offset the judgment against the litigant's preexisting debt. *Id.* Within the EAJA context, the Supreme Court held that a "fees award is payable to the litigant and is therefore subject to a Government offset to satisfy a pre-existing debt that the litigant owes the United States." *Id.* The Supreme Court so held, even though it recognized "the practical reality that attorneys are the beneficiaries and, almost always, the ultimate recipients of the fees that the statute awards to prevailing parties." *Id.* at 598 (alteration and internal quotation marks omitted). We extended *Ratliff* to the CAFRA context in *$186,416.00 I*, holding that "attorney fees awarded under CAFRA are payable to the claimant, not to claimant's attorney." 642 F.3d at 754. We further observed that "[d]irect payment to the attorney is the exception, not the rule. . . . Unless the statute specifies payment to the litigant's attorney, payment to the attorney is not assumed." *Id.* at 756. There is no language in CAFRA providing for direct payment of a fee award to the attorney.

Honig and the Kim Claimants rely on pre-*Ratliff* cases to argue that the fee awards should be paid directly to Honig. The primary case they rely upon is *U.S. ex rel Virani v. Jerry M. Lewis Truck Parts & Equip., Inc.*, 89 F.3d 574 (9th Cir. 1996). In that case (a *qui tam* action where fees were awarded under the False Claims Act), we determined that "the fee is for the attorney and the attorney should receive it," that is, the fees should be paid directly to the attorney. *Id.* at 578. We left no doubt there: a fee award "must be directed to the attorney. Were the rule otherwise, plaintiffs would obtain possession of fee awards, and attorneys would be left to attempt to obtain the money paid for their services as best

they could." *Id.* at 579.  Honig also cites to *Marre v. United States*, where the Fifth Circuit squarely held that the government could not set off an award of fees to the client's attorney against the client's tax liability, because the fee belongs to the attorney.[7]  117 F.3d 297, 304 (5th Cir. 1997).

However, the reasoning in these cases does not survive *Ratliff*.  In *Virani*, we recognized that the language of the False Claims Act provided that attorney's fees awards were to be paid to the clients, but interpreted this language to mean that a client had only the "power" to decide whether to seek fees or not.  89 F.3d at 576–79.  In *Ratliff*, the Supreme Court interpreted the text of the EAJA, providing that fees are to be awarded to the prevailing party, to mean that an award of attorney's fees was to be paid directly to the party and not to the attorney.  560 U.S. at 592–93.  *Ratliff* arrived at this holding in the same posture as *Marre*: whether the fee was paid directly to the attorney or not affected the government's right to use the fee award to offset a preexisting liability.  *Id.* at 590–91.  The Supreme Court in *Ratliff* recognized that it was overturning circuit precedent that provided for direct payment of fee awards under the EAJA to attorneys.  *Id.* Accordingly, *Ratliff* abrogated *Virani*,[8] and we are bound by

---

[7] Notably, the Fifth Circuit's reasoning was motivated in part by a recognition that, if the attorney's ownership of the fees derived from an assignment, that interest would be voided by the Anti-Assignment Act. *Marre*, 117 F.3d at 305.

[8] "As a three-judge panel of this circuit, we are bound by prior panel decisions . . . and can only reexamine them when their 'reasoning or theory' of that authority is 'clearly irreconcilable' with the reasoning or theory of intervening higher authority."  *Rodriguez v. AT&T Mobility Servs. LLC*, 728 F.3d 975, 979 (9th Cir. 2013) (quoting *Miller v. Gammie*, 335 F.3d 889, 893 (9th Cir. 2003) (en banc)).  "It is not enough for there

our holding in *$186,416.00 I* that "attorney fees awarded under CAFRA are payable to the claimant, not to claimant's attorney." 642 F.3d at 754.

Honig and the Kim Claimants' final argument that the fees should be paid directly to Honig depends upon language in *United States v. $186,416.00* that "fees may be directed to an attorney on account of a contractual assignment, even when the attorney has no statutory right to collect fees directly." 722 F.3d 1173, 1175 (9th Cir. 2013) ("*$186,416.00 II*"). However, in that case, the government had waived its rights under the Anti-Assignment Act. *Id.* at 1176 n.1. *$186,416.00 II* did not reach this question: whether a contractual assignment of an attorney's fees award can survive after the government invokes its rights under the Anti-Assignment Act. Because an award of attorney's fees under CAFRA is "a claim against the United States" and the fees are payable directly to the Kim Claimants, the Anti-Assignment Act applies to the assignment in this case. The remaining question is the scope of the Anti-Assignment Act and what rights, if any, Honig retains in the fee awards.

---

to be 'some tension' between the intervening higher authority and prior circuit precedent, or for the intervening higher authority to 'cast doubt' on prior circuit precedent. The intervening higher precedent must be 'clearly inconsistent' with the prior circuit precedent." *Lair v. Bullock*, 697 F.3d 1200, 1207 (9th Cir. 2012) (citations omitted) (quoting *United States v. Delgado-Ramos*, 635 F.3d 1237, 1239 (9th Cir. 2011) and *United States v. Orm Hieng*, 679 F.3d 1131, 1140–41 (9th Cir. 2012)). We are unable to reconcile *Virani* with *Ratliff* under even this demanding standard.

**C. The Anti-Assignment Act Voids the Assignment of the Fee Awards, but Honig Retains an Attorney's Lien in the Proceeds**

The plain language of the Anti-Assignment Act compels the conclusion that the purported assignment of the Kim Claimants' attorney's fees awards to Honig is void. The Act states that "[a]n assignment may be made only after" the laundry list of requirements has been met. 31 U.S.C. § 3727(b). It is undisputed that the Kim Claimants and Honig failed to abide by the Anti-Assignment Act. Because it applies to the assignment at issue in this case, that assignment is void. Therefore, the award of attorney's fees must be paid to the Kim Claimants, and not to Honig.

Cases interpreting the Anti-Assignment Act over its long history have been unequivocal: the Act, where it applies, is a total bar on the assignment of claims against the United States. In *United States v. Gillis*, the Supreme Court held that assignments that ran afoul of the Anti-Assignment Act "were made void by the statute." 95 U.S. at 415. Failure to comply with the Act renders an "assignment 'null and void as against the United States.'" *Northrop Grumman Computing Sys., Inc. v. United States*, 709 F.3d 1107, 1113 (Fed. Cir. 2013). However, voiding the assignment is the extent of the Act's reach; applying the Act "leaves the claim where it was before the purported assignment." *Colonial Navigation Co. v. United States*, 181 F. Supp. 237, 240 (Ct. Cl. 1960). The underlying agreement is untouched, only the assignment is voided. *See Murkledove*, 635 F.3d at 794. Thus, although the assignment is voided by the Anti-Assignment Act, there is nothing in the Act to prevent Honig from obtaining an interest in the attorney's fees awards through another mechanism.

Under California law, Honig obtained an attorney's lien against the CAFRA attorney's fees awards. "In California, an attorney's lien is created only by contract—either by an express provision in the attorney fee contract or by implication where the retainer agreement provides that the attorney is to look to the judgment for payment for legal services rendered." *Carroll v. Interstate Brands Corp.*, 121 Cal. Rptr. 2d 532, 534 (Ct. App. 2002) (citations omitted). "An attorney's contractual lien is created and takes effect when the fee agreement is executed." *Waltrip v. Kimberlin*, 79 Cal. Rptr. 3d 460, 465 (Ct. App. 2008). "A contractual lien for attorney fees is a secret lien; no notice is required before it is effective against a judgment creditor who levies on the judgment." *Id.* The language of the fee agreement in this case states that a fee award under CAFRA belongs to Honig. This language is likely sufficient under California law to give rise to a lien in the attorney's fees awards for Honig's benefit. The Government concedes that Honig likely obtained a lien in the fee awards as a matter of California law. The Government argues, however, that the Anti-Assignment Act reaches beyond the assignments at issue and voids any interest that Honig might have in the awards, at least as against the United States, leaving the Government's tax liens with priority over all other interests.

The Government relies primarily on two Supreme Court cases for its expansive view of the Anti-Assignment Act's scope. In *Nutt v. Knut*, the Supreme Court held that a clause in a contract "making the payment of the attorney's compensation a *lien* upon the claim asserted against the government" was "null and void upon its face." 200 U.S. 12, 20 (1906). However, the Supreme Court declined to reverse the state court judgment in favor of the attorney, holding that the contract "created a legal obligation upon the part of the

[client] which, if not recognized after collection of the money, could have been enforced by suit for the benefit of the attorney, without doing violence to the statute or to the public policy established by its provisions." *Id.* at 21. At most, voiding the clause in the contract meant that the "agreement did not give the attorney any interest or share in the claim itself, nor any interest in the particular money paid over to the claimant by the government." *Id*. That said, the Supreme Court in *Nutt* did not confront the issue here: the contract "did not assume to give [the attorney] any lien upon the claim, or any priority in the distribution of the money . . . . Indeed, no lien is asserted by the plaintiff in his pleadings." *Id*.

*Nutt* was followed by the second Supreme Court case relied upon by the Government, *Calhoun v. Massie*, 253 U.S. 170 (1920). In *Calhoun*, the Supreme Court held that the Anti-Assignment Act voided "[t]he provision in the contract sued on purporting to give a lien upon any warrant issued." *Id*. at 175. This was the only line in *Calhoun* that pertained to the Anti-Assignment Act, the rest of the case was devoted to a statute limiting contingency fee agreements for Civil War claims. *Id*. Other cases have followed *Nutt* and *Calhoun* to hold that attorneys may not take a contingency interest in or a lien against claims against the United States. *See United States v. Transocean Air Lines, Inc.*, 386 F.2d 79, 82 (5th Cir. 1967) ("A contingent fee in a judgment against the United States is an assignment subject to the Anti-assignment Act."); *Kearney v. United States*, 285 F.2d 797, 800 (Ct. Cl. 1961) ("[A] contract between an attorney and a client which gives the attorney an interest in the client's claim against the Government is exactly what the anti-assignment statute forbids."); *Pittman v. United States*, 116 F. Supp. 576, 580 (Ct. Cl. 1953) (holding that *Nutt* "stands for the broad principle that any attempt to impress a lien upon the proceeds

of a claim against the United States as security for the payment of an attorney's fee is within the ends to which the prohibition of [the Act] was aimed.").

However, Honig is not asserting a right akin to a contingency fee in the awards, which could be voided by operation of the Anti-Assignment Act. His lien against the awards arose from the representation agreement by operation of California law. The Government's cited precedents stand for a narrow proposition: an assignee may not stand in the shoes of the assignor and seek payment directly from the United States. In all of the cases cited, the attorney was seeking direct payment from the United States, and thus stood in the shoes of the assignor. *See Transocean Air Lines, Inc.*, 386 F.2d at 81; *Kearney*, 285 F.2d at 799; *Pittman*, 116 F. Supp. at 577; *see also Shannon*, 342 U.S. at 290–91; *Aetna Cas. & Sur. Co.*, 338 U.S. at 369; *Gillis*, 95 U.S. at 411. *Calhoun* reinforces this interpretation of the Anti-Assignment Act. *Calhoun* stated only that the Anti-Assignment Act prohibited the creation of a lien on the *warrant*. 253 U.S. at 175. The warrant, at that time, was not the proceeds of a claim against the United States but the right to be paid directly from the Treasury. *See* Black's Law Dictionary 1724 (9th ed. 2009) (defining "treasury warrant" as "[a]n order in the form of a check on which government disbursements are paid"). Notably, the predecessor to the Anti-Assignment Act stated only that a claim allowed by Congress "shall not . . . be paid to any person or persons other than the claimant or claimants." Act of July 29, 1846, ch. 66, 9 Stat. 41. From the beginning, then, the Anti-Assignment Act has been concerned with *direct* payment of claims.

Subsequent to *Nutt* and *Calhoun*, the Supreme Court relaxed the harsh strictures of the Anti-Assignment Act. In

*Martin*, the Court confirmed that the Anti-Assignment Act reaches only the initial payment from the Treasury, holding that "[a]n assignment ineffective at law may none the less amount to the creation of an equitable lien when the subject matter of the assignment has been reduced to possession and is in the hands of the assignor." *Martin*, 300 U.S. at 597. This interpretation is consistent with the Act's purposes. The United States has no need to worry about fraud or any of the other evils associated with the assignment of claims against it once the proceeds of the claim have been reduced to the possession of the purported assignor. The key purpose of the act in this case, "to save to the United States 'defenses which it has to claims by an assignor . . . which might not be applicable to an assignee,'" *Shannon*, 342 U.S. at 291–92 (citation omitted), is not implicated when the proceeds of the claim have already been paid out. By the time the CAFRA awards have been paid to the Kim Claimants, as they must, the Government has had every opportunity to assert any defenses that it had against the Kim Claimants. Adopting the Government's position would transform the Anti-Assignment Act from its core purpose as a defense that the Government may assert to claims against the United States, *see Murkledove*, 635 F.3d at 794, to a far reaching mechanism that the Government can use to interfere with the private arrangements of a claimant solely because the claimant has come into possession of federal moneys.

The circumstances of this case illustrate why the Anti-Assignment Act should be so circumscribed. The Government urges us to extend the Anti-Assignment Act to invalidate all interests that Honig has in the attorney's fees awards that he earned, because such an interpretation is necessary to protect the Government's ability to collect taxes. However, the Government had an opportunity to protect its

ability to collect taxes in this case and will have that ability in the future. Nothing in our opinion today impinges upon the Government's statutory right to offset an award of attorney's fees against a claimant's tax liabilities. The Government in this case simply waived its right to do so, and now seeks to stretch the Anti-Assignment Act beyond all recognition to rescue it from its litigation decision. Having waived the right to set off the attorney's fees awards, the Government must rely on its tax liens against the Kim Claimants, and it is free to enforce them. But in doing so, the Government will have to contend with Honig's attorney's lien.

Because the Anti-Assignment Act applies to void the assignment in the representation agreement between the Kim Claimants and Honig, we vacate the district court's order awarding attorney's fees directly to Honig. We remand for further proceedings, including determining the priority of liens in the awards.[9]

## CONCLUSION

The Government also appeals the district court's order denying its Rule 60(b)(1) motion. "A district court's denial of relief from a final judgment, order, or proceeding under

---

[9] The Government's position as to lien priority if the Anti-Assignment Act does not apply is not clear. In a footnote in its brief, the Government concedes that, if the Anti-Assignment Act does not bar the assignment, Honig's interest is superior to the Government's tax lien. However, in the same footnote the Government cites to a later page in its brief asserting that its admission with regard to lien priority in the properties does not carry over to the attorney's fees awards. We remand for further proceedings, because the Government's position is unclear, and the Government did not anticipate our holding that Honig's interest in the fee awards could survive the Anti-Assignment Act.

Federal Rule of Procedure 60(b) is reviewed for abuse of discretion." *Lemoge v. United States*, 587 F.3d 1188, 1191–92 (9th Cir. 2009). Honig and the Kim Claimants agree that, if we were to conclude that the Anti-Assignment Act applies, that the additional awards at issue in the Rule 60(b)(1) motion must also be vacated. In light of our conclusion that the Anti-Assignment Act applies to an award of attorney's fees under CAFRA, we vacate the district court's post-judgment orders awarding additional fees and remand for further proceedings.

The parties are to bear their own costs on appeal.

**VACATED AND REMANDED**.